UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------x

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: July 27, 2010
```

M.M. and H.M., on behalf of, J.M.,                   :

                                Plaintiff,           :          09 Civ. 5236 (PAC)

                                                     :

            -against-                                :          MEMORANDUM
                                                     :          OPINION & ORDER
NEW YORK CITY DEPARTMENT OF                          :
EDUCATION, JOEL KLIEN, *in his*                      :
*individual and official capacity as*               :
*Chancellor of the New York City School*            :
*District*, NEW YORK STATE                           :
DEPARTMENT OF EDUCATION,                             :
ESTHER MORA, *in her individual and*                :
*Official capacity as Impartial Hearing*            :
*Officer appointed by New York State*               :
*Education Department*,                              :

                                                     :

                                Defendants.          :

-----------------------------------------------------x

HONORABLE PAUL A. CROTTY, United States District Judge:

         Plaintiffs M.M. and H.M. bring this action on behalf of their disabled son, J.M.,

against Defendants New York City Department of Education ("NYCDOE"), NYCDOE

Chancellor Joel Klein ("Chancellor Klein"), New York State Education Department

("SED") and Impartial Hearing Officer Esther Mora (" IHO Mora") under the Individuals

with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 et seq., Section 504 of the

Rehabilitation Act of 1973 ("Section 504"), 29 U.S.C. § 794, and 42 U.S.C. § 1983.[1]

The IDEA's so-called "stay put" or "pendent placement" provision requires, in general,

that a disabled student remain in his or her "then-current educational placement" while

_____

[1] In the Complaint's caption, SED is sued as the "New York State Department of Education" and Klein is sued in his individual capacity and his official capacity as Chancellor of the "New York City School District." The body of the Complaint names the "State Education Department of New York" as a defendant and describes Klein as Chancellor of the NYCDOE. (Compl. ¶¶ 9-10).

administrative proceedings relating to the student's education are pending.  20 U.S.C. § 1415(j).  Plaintiffs seek reimbursement under the stay-put provision for education expenses they incurred on J.M.'s behalf while an administrative challenge to his placement was ongoing.  In addition to their reimbursement claim, Plaintiffs seek damages, equitable relief and attorneys' fees.

The SED moves to dismiss the Complaint for lack of subject matter jurisdiction under Rule 12(b)(1) of the Federal Rules of Civil Procedure and for failure to state a claim under Rule 12(b)(6).  The NYCDOE and Chancellor Klein (together, "City Defendants") move to dismiss for lack of subject matter under Rule 12(b)(1).  In addition to other arguments, the SED contends that Plaintiffs' damages claims are barred by the Eleventh Amendment and that Plaintiffs lack standing to pursue injunctive relief.  The City Defendants and the SED both argue that Plaintiffs' claims should be dismissed for failure to exhaust administrative remedies.  For the reasons that follow, the motions to dismiss are GRANTED.[2]

## Background

### I. Statutory Framework

The primary object of the IDEA is to provide disabled students with a "free appropriate public education" ("FAPE").  20 U.S.C. § 1400(d)(1)(A).[3]  A FAPE consists of publicly funded "special education and related services," that "include an appropriate . . . education," and "are provided in conformity with an individualized education

---

[2] This action was initially assigned to Judge Denny Chin.  Upon Judge Chin's ascension to the Court of Appeals, the action was reassigned to the undersigned on May 12, 2010.
[3] Congress amended the IDEA by enacting the Individuals with Disabilities Education Improvement Act of 2004 ("IDEIA"), Pub. L. No. 108-446, 118 Stat. 2647, which took effect on July 1, 2005.  Courts, however, continue to refer to the amended Act as the IDEA.  Except where noted, the statutory citations in this opinion are to the IDEA as amended by the IDEIA.

program." 20 U.S.C. § 1401(9). Educators and the parents of a child covered by the IDEA must jointly develop an individualized education program ("IEP") for each year of the child's education. See Polera v. Bd. Of Educ. Of the Newburgh Enlarged City Sch. Dist., 288 F.3d 478, 482 (2d Cir. 2002); 20 U.S.C. §§ 1401(14), 1414(d). The IEP "must include an assessment of the child's current educational performance, must articulate measurable educational goals, and must specify the nature of the special services that the school will provide." Shafer v. Weast, 546 U.S. 49, 53 (2005) (citing 20 U.S.C. § 1414(D)(1)(A)). In New York City, the NYCDOE "is charged with providing a FAPE to all students with disabilities between the ages of 3 and 21 who reside in the City, and to develop the IEP for these students by convening local Committees on Special Education." A.D. v. Bd. of Ed. of the City Sch. Dist. of the City of New York, 690 F. Supp. 2d 193, 197 (S.D.N.Y. 2010) (citing N.Y. Educ. Law. § 4402).

The IDEA requires states to afford the parents of a disabled student "an array of procedural safeguards designed to help ensure the education of their child." Polera, 288 F.3d at 482 (citing 20 U.S.C. § 1415(a)). "Foremost among the procedural safeguards," Heldman v. Sobol, 962 F.2d 148, 150 (2d Cir. 1992), is the right to seek an administrative "impartial due process hearing." 20 U.S.C. § 1415(f). Parents are "entitled to request a due process hearing in order to present complaints as 'to any matter relating to the identification, evaluation, or educational placement of the child, or the provision of a free appropriate public education.'" Cave v. E. Medow Union Free Sch. Dist., 514 F.3d 240, 245 (2d Cir. 2008) (quoting 20 U.S.C. 1415(b)(6)(A)). If the due process hearing is "conducted by a local educational agency, any party aggrieved by the findings and decision rendered in such a hearing may appeal such findings and decision to the State

educational agency."  20 U.S.C. § 1415(g)(1).  On appeal, the state educational agency is

required to "conduct an impartial review of the findings and decision" and render "an

independent decision upon completion of such review."  20 U.S.C. § 1415(g)(2).

   In compliance with the requirements of Section 1415 of the IDEA, "New York

State has implemented a 'two-tier system of administrative review.'"  Mackey v. Bd. Of

Educ. For the Arlington Cent. Sch. Dist., 386 F.3d 158, 160 (2d Cir. 2004) (quoting

Murphy v. Arlington Cent. Sch. Dist. Bd. of Educ., 297 F.3d 195, 197 (2d Cir. 2002)).

At the first level of review, an impartial hearing officer ("IHO") appointed by the local

board of education conducts a due process hearing.  See Gagliardo v. Arlington Cent.

Sch. Dist., 489 F.3d 105, 108 (2d Cir. 2007) (citing N.Y. Educ. Law § 4404(1)).

Following the decision of the IHO, an aggrieved party may appeal to a state review

officer ("SRO").  N.Y. Educ. Law § 4404(2).  "After exhausting this two-step

administrative process, any party still aggrieved may bring a civil action challenging the

decision in federal or state court."  R.B. v. New York City Dept. of Educ., __ F. Supp. 2d

__, No. 09 Civ. 7758(RJS), 2010 WL 1948312, at *1 (S.D.N.Y. May 5, 2010) (citing 20

U.S.C. § 1415(i)(2)(A); N.Y. Educ. Law § 4404(3)).

   With one exception not relevant here, the IDEA's stay-put provision provides:

"[D]uring the pendency of any proceedings conducted pursuant to this section, unless the

State or local educational agency and the parents otherwise agree, the child shall remain

in the then-current educational placement of the child . . . until all such proceedings have

been completed."  20 U.S.C. § 1415(j); see also N.Y. Educ. Law § 4404(4)(a) (providing

for same result).  If the student's "current educational placement" is in private school,

   the responsibility for private school tuition "stays put" as well.  Thus, if
   the district has been paying for private school tuition, the district must

> continue to do so until the moment when the child's pendency changes –
> either when there is an agreement between the parents and the district, or
> when an[] SRO hands down a pendency-altering decision.

New York City Dept. of Educ. v. S.S., No. 09 Civ. 810(CM), 2010 WL 983719, at *6 (S.D.N.Y. Mar. 17, 2010). Section 1415(j) represents "Congress' policy choice that all handicapped children, *regardless of whether their case is meritorious or not*, are to remain in their current educational placement until the dispute with regard to their placement is ultimately resolved." Mackey, 386 F.3d at 160-61 (quoting Susquenita Sch. Dist. v. Raelee S., 96 F.3d 78, 83 (3d Cir. 1996)).

## II. Facts

J.M. is nine years old and has been diagnosed with autism. (Compl. ¶ 2). He also "presents with a number of other disabilities, such as apraxia of speech (an expressive and receptive language disorder), motor feeding delays, sensory processing issues and gross and fine motor planning." (Id.) During the 2006-2007 school year, J.M. attended the McCarton Center ("McCarton"), a private school that focuses on educating autistic children. (Findings of Fact and Decision dated 3/3/2008 ("FOF&D 3/3/2008") at 3, Compl., Ex. 1; Compl. ¶ 19). Pursuant to the decision of an IHO, Plaintiffs were reimbursed for the cost of tuition. (FOF&D 3/3/2008 at 3). In an IEP for the 2007-2008 school year, the NYCDOE recommended that J.M. be placed in public school. (Id.) Plaintiffs challenged the IEP, and a due process hearing was held before IHO James McKeever ("IHO McKeever"). (Id.; Compl. ¶ 17). Plaintiffs argued that the IEP failed to offer a FAPE because the proposed placement would not sufficiently address J.M.'s educational needs. (FOF&D 3/3/2008 at 3). IHO McKeever agreed with Plaintiffs, and

in a written decision dated March 3, 2008, found McCarton to be an appropriate placement for J.M.  (Id. at 5; Compl. ¶¶ 17-18).

IHO McKeever ordered the NYCDOE to reimburse Plaintiffs for the cost of J.M.'s tuition at McCarton for the 2007-2008 school year.  (FOF&D 3/8.2008 at 6).  The NYCDOE was also ordered to reimburse Plaintiffs for all expenses incurred in connection with J.M.'s home based applied behavioral analysis ("ABA"), which included 10 hours per week of extended day one-on-one ABA services, parent training and supervision.  (Id.)  Moreover, the NYCDOE was directed to provide J.M. with one-on-one 45 minute speech and language therapy sessions three times per week.  (Id.)  The NYCDOE did not appeal IHO McKeever's decision.  (Compl. ¶ 20).

In an IEP for the 2008-2009 school year, the NYCDOE recommended that J.M. be placed in a program similar to the one recommended in the IEP for 2007-2008. (Letter titled Demand for Due Process and Pendency dated 9/3/2008 ("9/3/2008 Letter") at 2, Compl., Ex. 2).  Plaintiffs objected to the IEP and their attorney sent the NYCDOE a letter dated September 3, 2008 requesting a due process hearing.  (Id. at 1; Compl. ¶ 21). The letter, which is titled "Demand for Due Process and Pendency," states that Plaintiffs are entitled to "pendency" pursuant to IHO McKeever's decision of March 3, 2008. (9/3/2008 Letter at 1; Compl. ¶ 22).  After describing the placement ordered by IHO McKeever, the letter explains that "[i]f the DOE fails to comply with . . . [J.M.'s] automatic right to pendency under the IDEIA's federal mandates, we request an immediate pendency hearing."  (9/3/2008 Letter at 1).  As to the merits of the IEP, the letter states that the NYCDOE's recommended placement for the 2008-2009 school year failed to offer J.M. a FAPE.  (Id. at 2).  In its answer to Plaintiffs' demand for a due

process hearing, the NYCDOE did not contest J.M.'s right to pendency reimbursement. (Compl. ¶ 23; Answer dated September 11, 2008, Compl., Ex. 3).

The parties were unable to resolve their differences and a due process hearing was held before IHO Mora.  (Compl. ¶ 24).  On the first day of the hearing, the NYCDOE did not object to Plaintiffs' pendency request.  (Hearing Transcript at 6:11-12, Compl., Ex. 4 ("The District's position is that there's no objection to pendency"); Compl. ¶ 25).  Later in the hearing, Plaintiffs' counsel explained to IHO Mora that "[o]n the first hearing date, it was a pendency hearing, and I still haven't received the pendency order.  There was no objection by the DOE, and I -- . . . -- I have no -- I -- so the parent[s] can't get reimbursed or -- without a pendency order."  (Hearing Transcript at 383:3-10; Compl. ¶ 26).  IHO Mora responded, "All right.  Noted."  (Hearing Transcript at 383:11-12).  IHO Mora, however, never issued an order requiring the NYCDOE to provide Plaintiffs with pendency reimbursement.  (Compl. ¶ 27).

On February 12, 2009, IHO Mora issued a written decision rejecting Plaintiffs' objections and upholding J.M.'s IEP for the 2008-2009 school year.  (Findings of Fact and Decision dated 2/12/2009 ("FOF&D 2/12/2009") at 9, Compl., Ex. 1; Compl. ¶ 28).  IHO Mora concluded that the NYCDOE's recommended placement "was reasonably calculated to confer educational benefit and thus, offered the student a FAPE."  (FOF&D at 9).  The decision makes no mention of Plaintiffs' request for pendency reimbursement, but at the end states that "I have examined the parties remaining contentions and find that it is unnecessary to reach them for the reason set forth above or because they are not disputed issues."  (Id.)  As required, see N.Y. Comp. Codes R. & Regs. tit. 8, §

200.5(j)(5)(v), a notice of Plaintiffs' right to appeal to the SRO within 35 days is attached to IHO Mora's decision.  (Id. at 9).  Despite the notice, Plaintiffs did not take an appeal.

Plaintiffs maintain that J.M. was entitled to have his tuition at McCarton, along with all of the other services ordered by IHO McKeever in his March 3, 2008 decision, funded by the NYCDOE through the end of the due process hearing before IHO Mora. (Compl. ¶ 37).  The NYCDOE has, however, "refused to take any action whatsoever to ensure that J.M. receive his pendency protection."  (Id. ¶ 39).  Plaintiffs allege, on information and belief, that the NYCDOE "routinely refuses to honor any student's pendency rights without first forcing the child to secure an order from a hearing officer." (Id. ¶ 40).

According to the Complaint, J.M. lived with Plaintiffs on the Upper East Side of Manhattan and was a student within the district served by the NYCDOE "at all relevant times."  (Id. ¶¶ 3, 6).  It is, however, undisputed that Plaintiffs and J.M. moved out of New York City at some point after IHO Mora issued her February 12, 2009 decision. (SED Mem. in Supp. Mot. to Dismiss. ("SED Mem.") at 5).[4]

## III. Procedural History

Plaintiffs commenced this action on June 4, 2009.  Count I of the five-count Complaint claims that by refusing to reimburse Plaintiffs for the costs of J.M.'s education during the pendency of the due process hearing before IHO Mora, Defendants denied J.M. his rights under the Constitution, the IDEA, Section 504 and New York Education Law.  (Compl. ¶¶ 42-47).  Count II claims, on information and belief, that Chancellor Klein "developed, either tacitly or actively . . . or permitted through inattention or

---

[4] According to the SED, Plaintiffs' counsel confirmed that Plaintiffs have moved out of New York City during a pre-motion conference before Judge Chin on October 9, 2009.  (SED Mem. at 5 n.3).  While the conference was not transcribed, Plaintiffs do not contest the SED's representation.

inaction" the NYCDOE's "policy, pattern or practice of ignoring a child's right to pendency when impartial hearing demands are filed." (Id. ¶¶ 49-50). This policy "serves to deprive children of their right to . . . [a FAPE] to which they are entitled under both state and federal law . . . and irreparably injures those children who attempt to avail themselves of the hearing provisions of the very statute which guarantees their right to remain in their pendent placement." (Id. ¶¶ 49, 50).

In Count III, Plaintiffs claim the NYCDOE's "requirement that a student who seeks review of his or her placement under the IDEIA at an impartial hearing must first get an order from a hearing officer on the issue of pendency and/or the . . . [NYCDOE's] refusal to honor J.M.'s pendency, after acknowledging that such rights existed and agreeing with plaintiffs as to what constituted the pendent placement, constitutes an intentional deprivation, bad faith and/or gross misjudgment." (Id. ¶ 53). Count IV claims, on information and belief, that the SED "is required to review any plan developed by the . . . [NYCDOE] to ensure that there exists substantial compliance," but that "the SED lacks any mechanism to ensure that there exists compliance in fact on the part of the . . . [NYCDOE] with respect to its promises made under the IDEA." (Id. ¶¶ 56-57). Finally, in Count V, Plaintiffs claim that IHO Mora "abused the powers of her office in holding a pendency hearing and refusing or neglecting to issue a ruling on the hearing, and/or refusing to address the issue in her Final Decision and Order." (Id. ¶ 65).

As relief, Plaintiffs ask the Court to declare that the NYCDOE failed to maintain J.M.'s pendent placement during the hearing before IHO Mora and to order the NYCDOE to reimburse Plaintiffs for the costs of J.M.'s pendent placement. (Id. at 10, ¶¶ (a)-(b)). Plaintiffs also seek a declaration that the NYCDOE and Chancellor Klein

"discriminated against special needs children who brought impartial hearing demands against the [NYCDOE]" and an order enjoining the NYCDOE from continuing its "policy, practice or pattern of ignoring pendency rights during the course of impartial hearings." (Id. at 10-11, ¶ (c). According to Plaintiffs, the Court should order the NYCDOE "to craft detailed procedures and safeguards to ensure that pendency rights are timely honored upon the request for an impartial hearing." (Id. at 11, ¶(c)).

As for the SED, Plaintiffs seek an order directing it to "develop procedures to review and confirm that school districts within the state have procedures and safeguards in place to ensure that pendency rights are timely honored upon a special needs child's request for an impartial hearing under the IDEIA." (Id. ¶ (d)). In addition to reimbursement and equitable relief, Plaintiffs seek compensatory and punitive damages, attorneys' fees and costs from all Defendants. (Id. ¶¶ (e), (g)).

Both motions to dismiss were filed on December 18, 2009. Plaintiffs' filed a brief in opposition and the motions were fully briefed on March 9, 2010.[5]

## Analysis

## IV. Standard of Review

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the court lacks the statutory or constitutional power to adjudicate the case." Nowak v. Ironworkers Local 6 Pension Fund, 81 F.3d 1182, 1187 (2d Cir. 1986). In ruling on a Rule 12(b)(1) motion, the court "may consider materials extrinsic to the complaint." Phifer v. City of New York, 289 F.3d 49, 55 (2d Cir. 2002). Since federal

---

[5] IHO Mora filed a pro se answer June 15, 2009. In a letter dated June 24, 2009, the New York Attorney General's Office ("AG's Office") explained that IHO Mora had made a request for representation, but that the AG's Office had yet to make a decision regarding the request. As of the date of this opinion, the AG's Office has not appeared on IHO Mora's behalf and she has not moved to dismiss.

courts are courts of limited subject matter jurisdiction, see Exxon Mobile Corp. v.

Allapattah Servs., Inc., 545 U.S. 546, 552 (2005), "[t]here are no presumptions in favor

of the jurisdiction of the courts of the United States." Ex parte Smith, 94 U.S. 455, 456

(1876).  Rather, "[a] plaintiff asserting subject matter jurisdiction has the burden of

proving by a preponderance of the evidence that it exists."  Makarova v. United States,

201 F.3d 110, 113 (2d Cir. 2000).

## V. Abandonment, Eleventh Amendment Immunity and Standing

The SED offers no less than eight separate arguments in support of its motion to

dismiss.  (SED Motion at 2-3).  Plaintiffs, however, only respond to the SED's alternative

argument that the Complaint should be dismissed for lack of subject matter jurisdiction

because Plaintiffs failed to exhaust their administrative remedies.  (Mem. in Opp. to

Mots. to Dismiss ("Mem. in Opp.") at 1-11).  In their brief in opposition, Plaintiffs do not

even mention the SED's arguments that the Complaint should be dismissed for lack of

subject matter jurisdiction because (1) Plaintiffs' damages claims against the SED are

barred by Eleventh Amendment sovereign immunity and (2) Plaintiffs lack standing to

seek prospective injunctive relief from the SED.  (Id.)  Plaintiffs' failure to respond to the

SED's arguments constitutes an abandonment of their claims against the SED.  See

Bonilla v. Smithfield Assocs. LLC, No. 09 Civ. 1549(DC), 2009 WL 4457304, at *4

(S.D.N.Y. Dec. 4, 2009) (plaintiff's failure to respond to two out of three of defendant's

arguments for dismissal of claim constitutes abandonment of the claim and calls for

dismissal as matter of law); Hanig v. Yorktown Cent. Sch. Dist., 384 F. Supp. 2d 710,

723 (S.D.N.Y. 2005) ("[B]ecause plaintiff did not address defendant's motion to dismiss

with regard to this claim, it is deemed abandoned and is hereby dismissed."); see

generally Brandon v. City of New York, __ F. Supp. 2d __, No. 07 Civ. 8789(LAP), 2010 WL 1375207, at *4 (S.D.N.Y. Mar. 30, 2010) (collecting cases).  Moreover, Plaintiffs bear the burden of proving that the Court has subject matter jurisdiction.  See Makarova, 201 F.3d at 113.   By standing mute in the face of the SED's jurisdictional challenge, Plaintiffs effectively concede that they cannot carry their burden and that the Court lacks subject matter jurisdiction over the claims against the SED.

Even if Plaintiffs' claims against the SED were not abandoned, the Court indeed lacks subject matter jurisdiction.  Whether Plaintiffs' damages claims are asserted under § 1983 or the New York State Education Law, the claims are barred by the Eleventh Amendment.  See Bd. of Educ. of the Pine Plains Cent. Sch. Dist. v. Engwiller, 170 F. Supp. 2d 410, 413 (S.D.N.Y. 2001) ("It has long been settled that the SED is immune from suit brought under Section 1983."); A.A. v. Bd. of Educ., 196 F. Supp. 2d 259, 266 (E.D.N.Y. 2002) ("Just as the Eleventh Amendment bars claims for relief under federal law, it acts as a bar to state law claims brought against a state in federal court.").[6]

---

[6] The basis for Plaintiffs' damages claim is far from clear.  At its outset, the Complaint states that the action is brought "pursuant to" the IDEA, Section 504 and Section 1983.  (Compl. ¶ 1).  But in the Complaint's prayer for relief, Plaintiffs asks the Court to "direct Defendants to compensate J.M. in compensatory and punitive damages in an amount that is just and reasonable pursuant to U.S.C. §§ 1982, 1985."  (Compl. at 11, ¶ (e)).  This appears to be a reference to 42 U.S.C. § 1982 (prohibiting racial discrimination with respect to real and personal property) and 42 U.S.C. § 1985 (prohibiting conspiracies to interfere with civil rights).  Leaving aside the fact that the Complaint does not contain any racial discrimination or conspiracy allegations, the Eleventh Amendment bars claims against the SED under §§ 1982 and 1985.  See Jones v. Nat'l Commc'n & Surveillance Networks, 409 F. Supp. 2d 456, 466-68 (S.D.N.Y. 2006).  Monetary damages are not recoverable under the IDEA.  See Polera, 288 F.3d 478, 486 (2d Cir. 2002) ("We therefore hold that monetary damages are not available under the IDEA.").  And while the Complaint cannot plausibly be construed to assert a damages claim against the SED under Section 504, "monetary damages are recoverable [under Section 504] only upon a showing of an *intentional* violation."  Loeffler v. Staten Island Univ. Hosp., 582 F.3d 268, 275 (2d Cir. 2009).  There are no allegations in the Complaint which indicate that the SED committed an intentional violation of Section 504.  See 29 U.S.C. § 794(a) ("No otherwise qualified individual with a disability . . . shall, solely by reason of his or her disability, be denied the benefits of, or be subjected to discrimination under any program receiving Federal financial assistance.").

To have constitutional standing "to obtain injunctive and related declaratory relief from the government, a plaintiff 'must show a likelihood that he will be injured in the future' by the conduct he seeks to enjoin." Morgan v. Cnty. Of Nassau, __ F. Supp. __, No. 09-cv-4168(ADS)(AKT), 2010 WL 2634125, at *13 (E.D.N.Y. July 1, 2010) (quoting Shain v. Ellison, 356 F.3d 211, 215 (2d Cir. 2004). And "abstract injury is not enough; rather, '[t]he injury or threat of injury must be both "real and immediate," not "conjectural" or "hypothetical."'" Shain, 356 F.3d at 215 (quoting O'Shea v. Littleton, 414 U.S. 488, 494 (1974)). Plaintiffs do not allege that they face a threat of future injury – let alone a "real and immediate" threat of future injury – from the SED's alleged lack of a mechanism to ensure that the NYCDOE complies with the IDEA. (Compl. ¶ 57). Indeed, since Plaintiffs and J.M. have moved out of New York City, they are no longer affected by the NYCDOE's allegedly flawed policies and the SED's claimed lack of an enforcement mechanism. As such, Plaintiffs do not have standing to seek injunctive relief from the SED.[7]

In light of Plaintiff's failure to respond to all but one of the SED's eight arguments for dismissal, the Court deems Plaintiffs' claims against the SED abandoned. Even if the claims were not abandoned, the Court lacks subject matter jurisdiction over Plaintiffs' claims against the SED. The SED's motion to dismiss is accordingly granted.

---

[7] Plaintiffs ask the Court to order the SED "to develop procedures and to review and confirm that school districts within the state have procedures and safeguards in place to ensure that pendency rights are timely honored upon a special needs school's request for an impartial hearing under the IDEIA." (Compl. at 11, ¶ (d)). While Plaintiffs request state-wide relief, the factual allegations in the Complaint relate solely to the NYCDOE. But regardless of whether Plaintiffs seek injunctive relief from the SED with respect to the NYCDOE alone or all school districts, the Complaint does not allege that Plaintiffs face an imminent threat of future injury and therefore Plaintiffs lack standing. See Shain, 356 F.3d at 215.

**VI. Exhaustion**

"It is well settled that the IDEA requires an aggrieved party to exhaust all administrative remedies before bringing a civil action in federal or state court . . . ." J.S. v. Attica Cent. Sch., 386 F.3d 107, 112 (2d Cir. 2004); see 20 U.S.C. § 1415(i)(2)(A).  A plaintiff's "failure to exhaust administrative remedies under the IDEA deprives a court of subject matter jurisdiction."  Polera, 388 F.3d at 483; see Cave, 514 F.3d at 245.[8]  In New York, both levels of administrative review – a due process hearing before an IHO and an appeal to a SRO – "must be exhausted before an aggrieved party may commence an action in federal court."  McAdams v. Bd. of Educ. of the Rock Point Union Free Sch. Dist., 216 F. Supp. 2d 86, 93 (E.D.N.Y. 2002).   Proper exhaustion is "critical" because the IDEA's administrative scheme "allows for the exercise of discretion and educational expertise by state and local agencies, affords full exploration of technical issues, furthers development of a complete factual record, and promotes judicial efficiency by giving these agencies the first opportunity to correct shortcomings in their educational programs for disabled children."  Taylor v. Vt. Dept. of Educ., 313 F.3d 768, 790 (2d Cir. 2002) (quoting Polera, 288 F.3d at 487).

The IDEA "requires plaintiffs with *any* claims related to the education of disabled children, whether brought under [the] IDEA or another statute . . . to exhaust the administrative remedies available under [the] IDEA prior to initiating a federal lawsuit." Kalliope R. v. New York State Dept. of Educ., __ F. Supp. 2d __, No. 09-CV-

---

[8] In Coleman v. New Berg Enlarged City School District, the Second Circuit noted that there is some dispute as to whether the IDEA's exhaustion requirement is a jurisdictional rule or a mandatory claims-processing rule.  503 F.3d 198, 203-04 (2d Cir. 2007).  But the Court did not resolve the issue, id. at 204, and after Coleman the Second Circuit has continued to refer to the exhaustion requirement as jurisdictional. See Cave, 514 F.3d at 245 ("Failure to exhaust the administrative remedies deprives the court of subject matter jurisdiction.").

1718(JFB)(WDE), 2010 WL 2243278, at *4 (E.D.N.Y. Jun. 1, 2010) (citing 20 U.S.C. §

1415(l)); see Polera, 288 F.3d at 481 ("[P]otential plaintiffs with grievances related to

education of disabled children generally must exhaust their administrative remedies

before filing suit in federal court, even if their claims are formulated under a statute other

than the IDEA.").  Even if the plaintiff seeks a remedy (such as monetary damages) that

is unavailable under the IDEA, the plaintiff must still exhaust administrative remedies

under the IDEA if "the claim is one that seeks relief for an alleged failure to provide

appropriate educational services."  Vutaggio v. Bd. of Educ., 216 F. Supp. 2d 96, 103

(E.D.N.Y. 2002); see Polera, 288 F.3d at 488 ("The fact that Polera seeks damages, in

addition to relief that is available under the IDEA, does not enable her to sidestep the

exhaustion requirements of the IDEA."). Claims seeking relief available under the IDEA

and brought under Section 504 and Section 1983 have been held to fall within the

purview of the IDEA's exhaustion requirement.  See Cave, 514 F.3d at 246-49; J.S., 386

F.3d at 112; Kalliope R., 2010 WL 2243278, at *4-5; Kelly v. Saratoga Springs City Sch.

Dist., No. 09-cv-276(GLS*RFT), 2009 WL 2163146, at *5 (N.D.N.Y. Sept. 25, 2009);

M.K. Sergi, 554 F. Supp. 2d 201, 219 (D. Conn. 2008).

  The Second Circuit has recognized that the exhaustion requirement "does not

apply in situations in which exhaustion would be futile."  Polera, 288 F.3d at 488

(internal quotation marks omitted).  "To show futility, a plaintiff must demonstrate that

'adequate remedies are not reasonably available' or that 'the wrongs alleged could not or

would not have been corrected by resort to the administrative hearing process."

Coleman, 503 F.3d at 205 (quoting J.G. v. Bd. of Educ. of Rochester City Sch. Dist., 830

F.2d 444, 447 (2d Cir. 1987)).  The burden of showing futility falls on the party seeking

to be excused from the exhaustion requirement.  See Cave, 514 F.3d at 249; Polera, 288 F.3d at 487 n.8.

The parties agree that the placement ordered by IHO McKeever in his March 3, 2008 decision – McCarton and related services – constituted J.M.'s pendent placement under the IDEA's stay-put provision during the course of the due process hearing before IHO Mora.  And the parties do not quarrel over whether Plaintiffs were entitled to be reimbursed for the cost of J.M.'s pendent placement during the course of the hearing.  What is disputed is whether Plaintiffs were required to appeal IHO Mora's decision to a SRO prior to commencing this action seeking reimbursement for the costs of J.M.'s pendent placement.

The City Defendants and the SED both contend that because Plaintiffs did not appeal IHO Mora's decision to a SRO, they failed to exhaust administrative remedies, and the Court lacks subject matter jurisdiction over all of Plaintiffs' claims.  Plaintiffs counter with three principal arguments.  First, Plaintiffs contend that claims under the IDEA's stay-put provision are not subject to the exhaustion requirement.  (Mem. in Opp. at 5-6).  Next, Plaintiffs argue that because the NYCDOE's pendency obligation is automatic, and the NYCDOE did not object to Plaintiffs' request for pendency reimbursement, there was no basis to appeal IHO Mora's decision.  (Id. at 8-9).  Plaintiffs' final argument is that even if exhaustion was required, the Court should order the NYCDOE to provide reimbursement for equitable reasons.  (Id. at 6-8, 9-11).

Plaintiffs read Murphy v. Arlington Central School District Board of Education, 297 F.3d 195 (2d Cir. 2002) to say that exhaustion is never required in suits alleging violations of the stay-put provision.  A careful reading of Murphy reveals, however, that

its holding is not that broad.  The plaintiffs in <u>Murphy</u> sought an injunction requiring the defendant school district "to assume financial responsibility for their child's tuition at Kildonan, a private school, during the pendency of administrative proceedings brought to determine Joseph's [the child] proper academic placement for the 1999-2000 school year."  <u>Murphy</u>, 297 F.3d at 197.  Critically, the request for an injunction was made while an administrative challenge to Joseph's placement was ongoing.  <u>Id.</u> at 198.  After finding that Kildonan was Joseph's "current educational placement" under the stay-put provision, the district court entered an order requiring the school district to finance his education pending the outcome of the administrative proceedings.  <u>Id.</u> at 198-99.

On appeal, the school district argued that the district court lacked subject matter jurisdiction over the plaintiffs claim because the plaintiffs never sought an administrative ruling on whether the school district was required to fund Joseph's private school education until the issue of his placement for the 1999-2000 school year was resolved. <u>Id.</u> at 199.  The Second Circuit disagreed, holding that the district court properly exercised jurisdiction.  <u>Id.</u> at 197.  In reaching this conclusion, the Court declined to endorse the United State's suggestion as *amicus curiae* that the IDEA's exhaustion requirement does not extend to the stay-put provision.  <u>Id.</u> at 199.  Instead, the Court assumed *arguendo* that the exhaustion requirement applies to all claims under the IDEA, but found that "an action alleging violations of the stay-put provision falls within one, if not more, of the enumerated exceptions to this jurisdictional prerequisite."  <u>Id.</u> at 199.

After describing the futility exception to the exhaustion requirement, the Court explained that "[t]he administrative process is 'inadequate' to remedy violations of § 1415(j) because, given the time sensitive nature of the IDEA's stay-put provision, an

immediate appeal is necessary to give realistic protection to the claimed right." Id.

(internal quotation marks omitted).  The Court reasoned that,

> Section 1415(j) establishes a student's right to a stable learning
> environment during what may be a lengthy administrative and judicial
> review.  If the child is ejected from his or her current educational
> placement while the administrative process sorts out where the proper
> interim placement should be, then the deprivation is complete.  A belated
> administrative decision upholding a student's stay-put rights provides no
> remedy for the disruption already suffered by the student.  Hence, as a
> practical matter, access to immediate interim relief is essential for the
> vindication of this particular IDEA right.

Id. at 199-200 (internal citation omitted).

Murphy does not establish a *per se* rule that all claims under the stay-put

provision are exempt from the exhaustion requirement.  The lynchpin of the Court's

analysis in Murphy is the "time sensitive nature" of stay-put claims seeking to compel

compliance with Section 1415(j) during the course of an ongoing administrative or

judicial proceeding.  Given the "time sensitive nature" of such a stay-put claim, resort to

the administrative process would be "inadequate" (i.e., futile) and therefore exhaustion is

not required.  Indeed, all of the cases cited by the Court in support of its holding involve

requests for injunctive relief requiring school districts to comply with the stay-put

provision while administrative challenges to a student's placement are in progress.  See

Cole v. Metro. Gov't of Nashville, 954 F. Supp. 1214, 1218-1222 (M.D. Tenn. 1997);

Carl B. v. Mundelein High Sch. Dist. Bd. of Educ., No. 93 CV 5304, 1993 WL 78799, at

*1-3 (N.D. Ill. Sept. 3, 1993); Digre v. Rosevill Sch. Indep. Dist. No. 623, 841 F.2d 145,

250 (8th Cir. 1988).  Moreover, Murphy overturned two district court cases applying the

exhaustion requirement to stay-put claims, Murphy 297 F.3d at 200 n.1, and both cases

involved "time sensitive" requests for injunctive relief during the course of administrative

proceedings.  See F.N. v. Bd. of Educ. of Sachem Cent. Sch. Dist at Holbrook, 894 F.

Supp. 605, 611 (E.D.N.Y. 1995); Schlude v. Ne. Cent. Sch. Dist., 892 F. Supp. 560, 563-

64 (S.D.N.Y. 1995).  And courts following Murphy recognize that its holding is based on

the inadequacy of the administrative process in the context of "time sensitive" claims,

seeking to compel prospective compliance with the stay-put provision, while

administrative proceedings are pending.  See, e.g., N.D. v. Haw. Dep't of Educ., 600 F.3d

1140, 1110 (9th Cir. 2010); Alston v. Dist. of Columbia, 439 F. Supp. 2d 86, 91 (D. D.C.

2006).

Unlike Murphy, Plaintiffs do not seek injunctive relief compelling the NYCDOE

to comply with the stay-put provision during the course of an ongoing administrative

proceeding.  Instead, they seek an order requiring the NYCDOE to "reimburse" them "for

the entire costs of J.M.'s pendent placement and program."  (Compl. at 10, ¶ (b)).

Plaintiffs' administrative challenge to J.M.'s IEP for the 2008-2009 school year is over,

and since Plaintiffs did not appeal IHO Mora's decision upholding the IEP for 2008-

2009, the placement ordered by IHO McKeever in his March 3, 2008 decision is no

longer J.M.'s "current educational placement."  20 U.S.C. § 1415(j).  Plaintiffs' request

for reimbursement – unlike the plaintiffs' request in Murphy for injunctive relief – is not

"time sensitive" and therefore falls outside the rationale of Murphy.

Plaintiffs argue that because the Murphy court "never noted any circumstances

where the 'stay-put' provision was subject to the exhaustion of administrative

requirement," the exhaustion requirement never applies "in actions involving the stay-put

provision."  (Mem. in Opp. at 6).  This argument by negative implication is, however,

belied by the analysis in Murphy and fails to account for the rule "that judicial review is

normally not available under . . . [the IDEA] until all administrative proceedings are completed." Honig v. Doe, 484 U.S. 305, 326-27 (1988).  Moreover, claims for reimbursement under other IDEA provisions must be exhausted.  See A.D., 690 F. Supp. 2d at 216; Gregg B. v. Bd. of Educ. of the Lawrence Sch. Dist., 353 F. Supp. 1333, 1337 (E.D.N.Y 1982).  Given Murphy's rationale based on the inadequacy of the administrative process, there is no reason to believe that the exhaustion requirement applies with any less force when reimbursement is sought under the stay-put provision. Finally, while there is a paucity of case law considering whether claims for pendency placement reimbursement must be exhausted, at least one court has held that exhaustion is required.  See Kutasi v. Las Virgenes Unified Sch. Dist., 494 F.3d 1162, 1169-70 (9th Cir. 2007) (dismissing reimbursement claim under stay-put provision for failure to exhaust available administrative remedies).[9]  Plaintiffs cannot avoid the IDEA's exhaustion requirement by relying on Murphy.

Plaintiffs contend that even if exhaustion was required, there was "no administrative remedy available under New York regulations."  (Mem. in Opp. at 8).  The regulations governing New York's administrative review process provide that pendency determinations "shall be made in writing, in the first instance, by the impartial hearing officer and may be reviewed by a State Review Officer."  N.Y. Comp. Codes R. & Regs. tit. 8, § 279.10(c).  Parties aggrieved by an IHO's pendency determination – or refusal to make a pendency determination – have two opportunities to appeal to a SRO:

---

[9] The Court is aware of Brennan v. Regional School District No. 1 Board of Education, 531 F. Supp. 2d 245 (D. Conn. 2008).  The plaintiffs in Brennan sought reimbursement under the stay-put provision, and in a footnote, the Court stated that "there is no exhaustion requirement for a stay-put claim."  Brennan, 531 F. Supp. 2d at 464 n.18 (citing Murphy, 297 F.3d at 199-200).  The Court did not, however, support this assertion with any analysis.  Id.  Further, the Court also noted that it was unclear whether the plaintiffs had exhausted their stay-put claim.  Id.

> Appeals from an impartial hearing officer's ruling, decision or refusal to
> decide an issue prior to or during a hearing shall not be permitted, with the
> exception of a pendency determination made pursuant to subdivision 4 of
> section 4404 of the Education law.  However, in an appeal to the State
> Review Officer from a final determination of an impartial hearing officer,
> a party may seek review of any interim ruling, decision or refusal to
> decide an issue.

N.Y. Comp. Codes R. & Regs. tit. 8, § 279.10(d).  A number of courts have recognized

the authority of IHOs and SROs to order reimbursement under the stay-put provision.

See Bd. of Educ. of the Pawling Cent. Sch. Dist. v. Schutz, 290 F.3d 476, 479 n.1 (2d

Cir. 2002); New York City Dep't of Educ. v. S.S., No. 09 Civ. 810(CM), 2010 WL

983719, at *8 (S.D.N.Y. Mar. 17, 2010); M.M. v. New York City Dep't of Educ., 583 F.

Supp. 2d 498, 502 (S.D.N.Y. 2008).

 Plaintiffs argue that because the NYCDOE did not challenge pendency on the first

day of the due process hearing before IHO Mora, "IHO [Mora] did not make an adverse

pendency determination."  (Mem. in Opp. at 8).  According to Plaintiffs, while IHO Mora

"did not issue an order as requested, that order was merely a procedural mechanism to

facilitate reimbursement and did not determine the substance of the pendency placement.

Accordingly, there was no determination or refusal to determine an issue to appeal to the

SRO, as the Department had agreed to pendency."  (Id. at 8-9).  But whether or not

pendency orders are "procedural" is irrelevant; parties are entitled to appeal an IHO's

"ruling, decision or refusal to decide an issue."  N.Y. Comp. Codes R. & Regs. tit. 8, §

279.10(d).  IHO Mora's failure to comply with Plaintiffs' request for a pendency order

was an "issue" and therefore subject to appeal.

 Plaintiffs also argue that since "there was no dispute as to J.M.'s current

placement for pendency purposes, . . . IHO [Mora] did not refuse to decide the issue,"

and therefore "there was no issue to appeal to the SRO for the SRO to 'determine.'"
(Mem. in Opp. at 9).  Similarly, Plaintiffs contend that since the NYCDOE's obligation
to fund J.M.'s pendent placement was "automatic by operation of law," IHO Mora "could
neither decide nor refuse to decide the issue."  (Id.)  Plaintiffs, however, improperly
conflate their right to have the NYCDOE fund J.M.'s pendent placement, see 20 U.S.C. §
1415(j), with their obligation to seek redress for a claimed violation of that right through
the administrative process, see 20 U.S.C. § 1415(i)(2)(A), (l).  The question here is not
whether Plaintiffs were entitled to reimbursement for the expense of J.M.'s pendent
placement; instead, the question is whether Plaintiffs could have obtained an order
directing the NYCDOE to provide reimbursement by appealing to a SRO.

        IHO Mora was empowered to issue a pendency order, N.Y. Comp. Codes R. &
Regs. tit. 8, § 279.10(c), and by failing to do so upon Plaintiffs' request she "refus[ed] to
decide an issue."  N.Y. Comp. Codes R. & Regs. tit. 8, § 279.10(d); see also (Compl. ¶
65 ("IHO Mora abused the powers of her office in holding a pendency hearing and
refusing or neglecting to issue a ruling on the hearing, and/or refusing to address the issue
of pendency in her Final Decision and Order")).  Plaintiffs could have appealed IHO
Mora's "refusal" to issue a pendency order to a SRO and the SRO could have ordered the
NYCDOE to provide reimbursement for the costs of J.M.'s pendent placement.  See N.Y.
Comp. Codes R. & Regs. tit. 8, § 279.10(c), (d).  But Plaintiffs did not take an appeal,
and so they failed to exhaust their administrative remedies as required by the IDEA.

        Plaintiffs' final argument is that the Court "should assume equitable jurisdiction."
(Mem. in Opp. at 6-8, 9-11).  In support of their argument, Plaintiffs rely on Mackey v.
Board of Education for the Arlington Central School District, 386 F.3d 158 (2d Cir.

2004).  But while <u>Mackey</u> involved a claim for pendency reimbursement, the district

court excused the plaintiffs' failure to exhaust administrative remedies "on the basis of

futility occasioned by the delay in the SRO's final decision on . . . [the plaintiffs'] tuition

reimbursement claim," <u>Mackey</u>, 386 F.3d  at 162 n.3, and the defendant school district

"did not challenge the district court's exhaustion finding on appeal."  <u>Id.</u>[10]   The issue on

appeal in <u>Mackey</u> was whether the district court erred in failing to retroactively apply the

SRO's untimely placement determination for purposes of fixing the student's pendent

placement.  <u>Id.</u> at 164-66.  As Plaintiffs point out, in finding that the district court had

erred, the Second Circuit explained that under the IDEA "equitable considerations are

relevant in fashioning relief."  <u>Id.</u> at 165 (citing 20 U.S.C. § 1415(i)(2)(B)(iii) (current

version at 20 U.S.C. § 1415(i)(2)(C)(iii)).  The "relief" referred to in <u>Mackey</u>, however, is

"relief" granted by a court possessed of jurisdiction.  Nothing in <u>Mackey</u> authorizes

courts to rely on free-ranging notions of equity to excuse a plaintiff's failure to exhaust

administrative remedies as required by the IDEA.  Unless the futility exception applies,

IDEA plaintiffs are required to exhaust their administrative remedies before filing suit in

federal or state court.  <u>See</u>  <u>Coleman</u>, 503 F.3d at 204-05; 20 U.S.C. § 1415(i)(2)(A), (l).

Plaintiffs have not shown that it would have been futile to appeal IHO Mora's decision to

a SRO, <u>see</u> <u>supra</u> at 20-22, and <u>Mackey</u> does not empower the Court to exercise

jurisdiction over Plaintiffs' unexhausted claims on equitable grounds.

---

[10] It is worth noting that <u>Mackey</u>, to some extent, undermines Plaintiffs' argument that all claims under the stay-put provision are exempt from the exhaustion requirement.  <u>See</u> <u>supra</u> at 16-20.  If <u>Murphy</u> exempted all stay-put claims from the exhaustion requirement, the district court in <u>Mackey</u> would presumably have resolved the exhaustion issue by relying on <u>Murphy</u>.  Instead, the district court held that the plaintiffs' failure to exhaust was excused on futility grounds in light of the SRO's "persistent and excessive untimeliness in rendering a decision."  <u>Mackey</u>, 386 F.3d at 162 n. 3.

Plaintiffs also argue that because the NYCDOE conceded the issue of pendency, the rational for requiring exhaustion does not apply, and their failure to exhaust should be excused. (Mem. in Opp. at 9-10). As just explained, however, the Court is not authorized to create new exceptions to the IDEA's statutorily mandated exhaustion requirement. But in any event, one of the rationales for requiring exhaustion is that it "permits an agency . . . to correct its own mistakes." Heldman v. Sobol, 962 F.2d 148, 159 (2d Cir. 1992). Rather than appealing IHO Mora's decision as required, Plaintiffs commenced this action and prevented the NYCDOE from "correct[ing] its own mistake[]" without the need for costly litigation. While Plaintiffs claim that dismissal of their claims will allow the NYCDOE "to avoid its clear responsibilities to bear the cost of . . . [J.M's] placement," (Mem. in Opp. at 11), and give the SED "a free pass for turning a blind eye to the Department's failure to properly enforce pendency," (id.), the fact remains that Plaintiffs could have appealed IHO Mora's decision, but they did not. Plaintiffs' failure to exhaust their administrative remedies divests the Court of jurisdiction and the City Defendants' motion to dismiss is accordingly granted.

**Conclusion**

For the foregoing reasons, the motions to dismiss are GRANTED. The Clerk of Court is directed to close the motions at docket numbers 11 and 14.

Dated: New York, New York
      July 27, 2010

SO ORDERED

_____
PAUL A. CROTTY
United States District Judge